CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
10/19/2017
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| COMMONWEALTH OF VIRGINIA, DEPARTMENT OF SOCIAL SERVICES, DIVISION OF CHILD SUPPORT ENFORCEMENT,<br><br>*Appellant,*<br><br>v.<br><br>HERBERT L. BESKIN, *ET AL.*,<br><br>*Appellees.* | CASE NO. 3:17-CV-00028<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

The debtor in this case, Mr. Webb, voluntarily entered Chapter 13 bankruptcy. Chapter 13 bankruptcy, unlike Chapter 7 bankruptcy, allows an individual to keep his property by agreeing to repay his debts out of his future earnings. As part of that process, Webb sent a portion of his income to the bankruptcy trustee. But Webb was unable to develop a satisfactory bankruptcy plan, and so the trustee prepared to return these payments to Webb. At this point, the Division of Child Support Enforcement ("the Division") ordered the trustee to instead give the Division this prepaid income because Webb had fallen behind on his child support payments. The trustee, unsure of what to do, asked the Bankruptcy Court to clarify his obligations. The Bankruptcy Court ruled that he should return the money to the debtor. The Division appealed, arguing that 11 U.S.C. § 1326(a)(2), which states that these payments should be returned "to the debtor," does not require the trustee to return the income to Webb. This appeal concerns the meaning of that statute. This Court will affirm the Bankruptcy Court and hold that the money must be returned to the debtor.

**I. PROCEDURAL BACKGROUND**

Webb filed for Chapter 13 bankruptcy on July 28, 2016. (Dkt. 5 at 3). At that time, he owed the Division $74,277.32. (*Id.*). The Division filed a proof of claim for this amount in the

bankruptcy case. (*Id.*). In accordance with Chapter 13's requirements, Webb paid approximately $3,000 of his income to the trustee. (*Id.*). However, Webb was unable to create a bankruptcy plan that met the statutory requirements, so he abandoned chapter 13 bankruptcy. (*Id.*). His case was dismissed. (*Id.*). Acting in accordance with state law, the Division then issued and served the Trustee with an order to withhold up to $80,354.59 from Webb. (*Id.*). The trustee filed a motion in the Bankruptcy Court asking the court to order him to either disburse the money to the debtor or to the Division. (*Id.*). This question was briefed and argued before the Bankruptcy Court. (*Id.*). The Bankruptcy Court entered an order overruling the Division's objection and instructing the trustee to return the funds to Webb. (*Id.* at 5). The Division appealed this final order in a timely manner. (*Id.* at 1). The Bankruptcy Court granted a stay pending the appeal; the trustee has retained possession of the money. (*Id.*).

## II. DISCUSSION

The question presented in this case is whether 11 U.S.C. § 1326(a)(2) requires a Chapter 13 bankruptcy trustee to return funds to a debtor after dismissal of the debtor's bankruptcy case if a creditor has attempted to levy on the trustee after dismissal of the case. Perhaps because "many debtors [] fail to complete a Chapter 13 [bankruptcy] plan successfully," *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015), this question appears to come up with some frequency. And courts have split, in roughly equal proportion, on the answer. *See In re Price*, 484 B.R. 870, 872 (Bankr. E.D. Ark. 2013) ("Courts are divided on the effect of a garnishment issued pursuant to state law and served on the Chapter 13 Trustee after a Chapter 13 case has been dismissed but before the Trustee has returned funds on hand to the debtor pursuant to 11 U.S.C. § 1326(a)(2)."); *In re Bailey*, 330 B.R. 775, 776 (Bankr. D. Or. 2005) ("There appears to be a split

of authority on this issue.").[1] The Fourth Circuit has yet to speak to this issue. This Court reviews the Bankruptcy Court's "conclusions of law *de novo.*" *In re Meredith*, 527 F.3d 372, 375 (4th Cir. 2008).

The "interpretation of the Bankruptcy Code starts 'where all such inquiries must begin: with the language of the statute itself.'" *Ransom v. FIA Card Servs. NA,* 131 S. Ct. 716, 723–24 (2011) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989)). Section 1326 provides when and how Chapter 13 debtors should make payments to trustees. Debtors must start making payments to trustees "not later than 30 days after the date of the filing of the plan or the order for relief." 11 U.S.C. § 1326(a)(1). The trustee keeps these payments "until confirmation or denial of confirmation." *Id.* at § 1326(a)(2). Then the road forks: "[i]f a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable." *Id.* Alternatively, "[i]f a plan is not confirmed, the trustee shall return any such

---

[1] There are many decisions following the plain language of the 11 U.S.C. § 1326(a)(2) and returning funds directly to the debtor. *See, e.g., Smith v. Strickland*, 178 B.R. 524 (M.D. Fla. 1995); *In re Garris*, 496 B.R. 343 (Bankr. S.D. N.Y. 2013); *In re Locascio*, 481 B.R. 285 (Bankr. S.D.N.Y. 2012); *In re Sexton*, 397 B.R. 375 (Bankr. M.D. Tenn. 2008); *In re Inyamah*, 378 B.R. 183 (Bankr. S.D. Ohio 2007); *In re Davis*, 2004 WL 3310531 (Bankr. M.D. Ala. 2004); *In re Bailey*, 330 B.R. 775 (Bankr. D.Or. 2005); *In re Oliver*, 222 B.R. 272 (Bankr. E.D. Va. 1998); *In re Walter*, 199 B.R. 390 (Bankr. C.D. Ill. 1996).

Other courts have treated the trustee as a "debtor of the Debtor" and allowed garnishments and levies on the trustee. *See, e.g., Beam v. IRS* (*In re Beam*), 192 F.3d 941 (9th Cir.1999); *Clark v. Commercial State Bank*, 2001 WL 685529 (W.D. Tex. 2001); *Massachusetts v. Pappalardo* (*In re Steenstra*), 307 B.R. 732 (1st Cir. BAP 2004); *In re Price*, 484 B.R. 870 (Bankr. E.D. Ark. 2013); *In re Fischer*, 432 B.R. 863 (Bankr. M.D. Fla. 2010); *In re Pruitt*, 2008 WL 2079145 (Bankr. M.D. Ala. 2008); *In re Brown*, 280 B.R. 231 (Bankr. E.D. Wis. 2002); *In re Doherty*, 229 B.R. 461 (Bankr. E.D. Wash. 1999); *In re Mishler, Jr.*, 223 B.R. 17 (Bankr. M.D. Fla. 1998); *In re Schlapper*: 195 B.R. 805 (Bankr. M.D. Fla. 1996). However, many of these cases involve a levy pursuant to *federal* law, changing the preemption analysis. *See, e.g., In re Beam*, 192 F.3d 941. Some of these cases do involve a levy pursuant to *state* law, analogous to the present case. *See, e.g., Clark*, 2001 WL 685529 (W.D. Tex. 2001).

At least one court has split the baby—directing the trustee to write a check to the debtor, but to send it to a state court. *In re Shields*, 431 B.R. 446 (Bankr. S.D. Ind. 2010).

payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b)." *Id.*

Here, the plan was not confirmed, and so this last sentence governs the trustee's disposition of the funds. This sentence contains two exceptions—neither of which is relevant here.[2] Setting these aside, the trustee is left with the simple directive to "return any such payments . . . to the debtor . . . ." 11 U.S.C. § 1326(a)(2). While the arguments made by the Division and the disagreeing courts are addressed below, it is ultimately this language that is determinative. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, NA*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.").

The Division's primary argument starts from the correct premise that "Section 1326(a)(2) must be interpreted in conjunction and harmonized with the other statutory provisions of title 11." Dkt. 5 at 5; *see, e.g., Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (U.S. 2000) ("The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. . . . It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'"). Building off that premise, the Division first directs the

---

[2]   The first, the trustee need not return "payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3)," was added in 2005. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, PL 109–8, April 20, 2005, 119 Stat 23. Commentators have remarked that this language is not crystal clear, but "it appears that the trustee is obligated to make payments to creditors, and withhold those payments from the debtor's refund, only if a specific order modifying payments to those creditors has previously been entered by the court and the trustee has not made any payments the trustee was ordered to make." Collier on Bankruptcy ¶ 1326.02 (16th 2017). No such previous order is at issue here. The second condition states that the trustee is not to return to the debtor "any unpaid claim allowed under section 503(b)." Section 503(b) allows the payment of various administrative expenses associated with the bankruptcy process. No administrative expenses are at issue here.

4

Court's attention to the Code's treatment of the automatic stay imposed during bankruptcy. (Dkt. 5 at 7–8 (discussing 11 U.S.C. §§ 362, 349)). During the pendency of the Chapter 13 proceeding, a stay is imposed that protects the debtor's estate from creditors' claims. 11 U.S.C. § 362. The stay terminates when the case is closed, and the protected property revests into the debtor's estate. *Id.* at §§ 362(c), 349. The Division argues that because the debtor no longer has any special protection, the Division should be able to levy on the trustee directly. (Dkt. 5 at 8).

The Division's desired approach does apply generally; when a stay ends the Division is welcome to levy on other individuals who possess the debtor's property or income (for example, an employer). But Congress changed the default situation in Section 1326(a)(2) by directing the trustee to give the funds to the debtor. Section 362's description of a stay's conclusion does not contradict or muddle Section 1326(a)(2)'s statement about *who* gets the funds, it only addresses *when* those funds are available. The context provided by Section 362 does not provide a convincing reason to depart from the plain language of Section 1326(a)(2).

The Division's second argument is that the plain meaning of Section 1326(a)(2) leads to absurd results. (Dkt. 5 at 9–10). The Division's most-developed example is that the plain meaning of the statute would allegedly force a trustee to return funds to a debtor when the confirmation of a bankruptcy plan is denied, but the debtor anticipates submitting a new plan. (*Id.* at 9). A leading treatise recommends that trustees can avoid this problem by simply "first ascertain[ing] whether the debtor seeks to modify the plan and again seek confirmation." Collier on Bankruptcy ¶ 1326.02 (16th 2017). If the debtor is going to apply again, the trustee should simply keep the income. *Id.* This common sense approach does not deviate from the text's mandate about *who* should receive the funds—it only affects *when* the debtor gets them. But more fundamentally, even if the Division was correct about a required return of funds, it is not

5

clear that this outcome is "absurd"—Congress could decide that the funds should return to the debtor between proposed plans *and* that funds return to a debtor at the end of an unconfirmed plan. Thus, the Division's second argument is also ultimately unconvincing.

Third, the Division argues that because 28 U.S.C. § 959(b) mandates that trustees manage the property according to the laws of the state, the trustee must submit to the state levy. (Dkt. 12 at 4–5). But this catch-all provision is best read as allowing state law to fill in responsibilities left unaddressed by the Code, not as overruling the Code's plain meaning *sub silentio*. *See Saravia v. 1736 18th St., N.W., Ltd. P'ship*, 844 F.2d 823, 826 (D.C. Cir. 1988) ("[S]ection 959(b) does not constitute a blanket statement by Congress that state laws are never preempted by the bankruptcy laws. On the contrary, it seems clear that if a state law unduly impeded the operation of federal bankruptcy policy, the state law would have to yield."). Here the Code mandates who should receive the funds, state law contradicts that mandate, and so the Division's third argument fails.

Contrary to the Division's arguments, the context provided by the Bankruptcy Code supports the plain meaning of Section 1326(a)(2). In 2015, the Supreme Court emphasized that the "wholly voluntary" process of Chapter 13 bankruptcy is meant to "benefit debtors and creditors alike." *Harris v. Viegelahn,* 135 S. Ct. 1829, 1835 (2015). Section 1326(a)(2) furthers these overarching purposes by returning the funds to the debtor and refusing to penalize the debtor for entering this voluntary proceeding. Last term, the Supreme Court emphasized that dismissal of a bankruptcy case "aims to return to the prepetition financial status quo." *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017). Before the petition, Debtor was receiving this income. If the Division can levy on the trustee for those funds now, the Bankruptcy Code would allow the Division to improve on its pre-petition position. It makes more sense to respect

the voluntary nature of the proceeding and allow the parties to proceed as if the petition had not occurred. In sum, the plain language of Section 1326(a)(2) should be read as stating that the trustee must "return any such payments . . . to the debtor . . . ."[3]

But what then of the state law? The Division "is authorized to issue to any person . . . orders to withhold and to deliver property of any kind including, but not restricted to, income of the debtor, when the Commissioner has reason to believe that there is in the possession of such person . . . property that is due, owing, or belonging to such debtor." Va. Code § 63.2-1929(A). The levied property "shall be withheld immediately upon receipt of the order to withhold" and the "property shall be delivered to the Commissioner upon receipt of an order to deliver." *Id.* at § 63.2-1929(D). Failure to withhold and deliver the property gives rise to civil penalties. *Id.* at § 63.2-1930.[4]

---

[3] In its clear and well-reasoned opinion, the Bankruptcy Court also expressed concerns that allowing parties to levy on the trustee would create a "race to the trustee." (Dkt. 1-2 at 4). Amicus raised similar concerns here. (*See generally* dkt. 11). This Court acknowledges that Congress may have attempted to avoid these potentially problematic outcomes in drafting the statute, and does not disagree with the Bankruptcy Court's reliance on this argument.

[4] The trustee argues that the Division did not have jurisdiction to engage in these proceedings under the *Barton* doctrine. (Dkt. 8 at 11). This argument is briefly addressed because it would offer a non-constitutional grounds of decision. *See Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."). The *Barton* doctrine originated from *Barton v. Barbour*, 104 U.S. 126 (1881), and holds that "before another court may obtain subject-matter jurisdiction over a suit filed against a receiver [including trustees] for acts committed in his official capacity, the plaintiff must obtain leave of the court that appointed the receiver." *McDaniel v. Blust*, 668 F.3d 153, 156 (4th Cir. 2012). The Fourth Circuit's formulation focuses on whether "*another court* may obtain *subject-matter jurisdiction* over a suit filed against a receiver," and here no other court has attempted to obtain subject-matter jurisdiction over the trustee. *McDaniel*, 668 F.3d at 156 (emphasis added). This Court is reluctant to expand the doctrine beyond instances where another Court has attempted to exert subject-matter jurisdiction over the trustee, and so will not apply the *Barton* doctrine here.

If these two statutes contradict each other, the federal statute must "preempt" the state statute. *See* U.S. Const., art. VI, cl. 2; *Cox v. Shalala*, 112 F.3d 151, 154 (4th Cir. 1997); Caleb Nelson, *Preemption*, 86 Va. L. Rev. 225, 264 (2000) ("The simple fact is that if a federal statute establishes a rule, and if the Constitution grants Congress the power to establish that rule, then the rule preempts whatever state law it contradicts."). "[A]ny state legislation which frustrates the full effectiveness of federal law" leads to a conflict and "is rendered invalid by the Supremacy Clause." *Perez v. Campbell*, 402 U.S. 637, 649, 652 (1971) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kansas*, 489 U.S. 493, 509 (1989) ("In the absence of explicit statutory language signaling an intent to pre-empt [state law], we infer such intent where . . . the state law stands as an obstacle to the accomplishment and execution of congressional objectives . . . ."). These statutes conflict because they tell the trustee to do opposite things. *Compare* 11 U.S.C. § 1326(a)(2) (telling the trustee to "return any such payments . . . to the debtor.") *with* Va. Code. § 63.2-1929 (telling the trustee that the "property shall be delivered to the Commissioner."). Accordingly, the Supremacy Clause mandates that Section 1326(a)(2) prevails over the Virginia statute.

### III. CONCLUSION

For the foregoing reasons, this Court will affirm the Bankruptcy Court and hold that the money must be returned to the debtor because 11 U.S.C. § 1326(a)(2) preempts state law.

An appropriate Order will issue, and the Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion to Plaintiffs, Defendants, and all counsel of record.

Entered this 19th day of October, 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE